FILED
United States Court of Appeals
Tenth Circuit

May 15, 2019

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVEN M. PETERSEN; PAULINE
PETERSEN,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 17-9003

_____

JOHN E. JOHNSTUN; LARUE A.
JOHNSTUN,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 17-9004

_____

**Appeal from the United States Tax Court**
**(CIR Nos. 015184-14 & 015185-14)**
_____

Michael C. Walch, Kirton McConkie, Lehi, Utah, for Petitioners-Appellants.

Jennifer M. Rubin (Bruce R. Ellisen, with her on the brief), Department of Justice, Tax
Division, Washington, D.C., for Respondent-Appellee.
_____

Before **HARTZ**, **PHILLIPS**, and **EID**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

This appeal concerns the propriety of the timing of deductions by a Subchapter S corporation for expenses paid to employees who participate in the corporation's employee stock ownership plan (ESOP). Stephen and Pauline Petersen and John and Larue Johnstun (Taxpayers) appeal the decision of the United States Tax Court holding them liable for past-due taxes arising out of errors in their income-tax returns caused by premature deductions for expenses paid to their Corporation's ESOP. Taxpayers contend that the Tax Court misinterpreted the Internal Revenue Code (IRC) and, even if its interpretation was correct, miscalculated the amounts of alleged deficiencies. The Commissioner agrees that a recalculation is necessary. Exercising jurisdiction under 26 U.S.C. § 7482(a), we affirm Taxpayers' liability but remand for recalculation of the deficiencies.

## I. BACKGROUND

Taxpayers were majority shareholders in Petersen Inc. (the Corporation), a Subchapter S corporation.[1] The disputed liabilities arise from Taxpayers' income-tax returns for 2009 (offset in small part by corrections in their favor for their 2010 returns). Because the Corporation is a Subchapter S corporation, it is a pass-through entity for income-tax purposes—that is, the Corporation does not itself pay income taxes, but its

---

[1] Larue Johnstun was not a shareholder in the Corporation, but is a party in this case because she filed her income-tax return jointly with her husband John.

taxable income, deductions, and losses are passed through to its shareholders. *See* 26 U.S.C. § 1366. For 2009 and most of 2010, Taxpayers owned 79.6% of the Corporation's stock. The remaining stock was held by the Corporation's ESOP. In October 2010 the ESOP acquired all of Taxpayers' stock, becoming the 100% owner.

The ESOP is an employee-benefit plan governed by the Employee Retirement Income Security Act (ERISA). Employee-benefit plans that qualify under the detailed requirements of ERISA, *see* 26 U.S.C. § 401(a), are exempt from income taxes, *see id.* § 501. An ESOP is a type of qualified employee-benefit plan in which an employer contributes shares of its own stock, or cash to purchase shares of its stock, into a trust, and those shares are allocated to individual employee accounts. *See* 26 U.S.C. § 4975 (e)(7); 29 U.S.C. § 1107(d)(6); *Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983). ESOPs provide employee participants the opportunity to gain ownership in shares of the employer corporation. As the Supreme Court has recently noted:

> "The Congress, in a series of laws [including ERISA] has made clear its interest in encouraging [ESOPs] as a bold and innovative method of strengthening the free private enterprise system which will solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees."

*Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (quoting Tax Reform Act of 1976, § 803(h), 90 Stat. 1590 (brackets added by Supreme Court)). A corporation's contributions paid to its ESOP are tax deductible. *See* 26 U.S.C. § 404(a)(3); *Brindle v. Wilmington Trust, N.A.*, 919 F.3d 763, 769 (4th Cir. 2019). There is no dispute that the Corporation's ESOP is qualified under ERISA.

3

The Corporation is an accrual-basis taxpayer and its ESOP-participant employees are cash-basis taxpayers. As a general rule, an accrual-basis taxpayer may deduct ordinary and necessary business expenses in the year when "all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy." 26 U.S.C. § 461(h)(4). But § 267 of the IRC restricts the timing of deductibility when the accrued expense is to be paid to a cash-basis taxpayer that is "related to" the taxpayer. *See id.* § 267(a)(2). Such expenses cannot be deducted until the amount of the payment becomes gross income of the related taxpayer. *See id*. Consider, for example, an employee on the Corporation's payroll who is "related to" the Corporation (we will call such employees "related employees"), works during the last eight days of the calendar year, but does not receive a paycheck until early the following year. Although the Corporation accrues the payroll expense in the year that the employee worked the eight days, it must delay the deduction until the next year, when the related employee receives the payment of wages.

Here, the Corporation deducted expenses for ESOP participants in the year that the expenses accrued even though it did not pay the expenses until the next year. Among those accrued expenses were wages and salaries (paid every second Friday) and unused vacation time rolled over by employees from one year to the next. If a payday fell early in January 2010, the Corporation could accrue during 2009 up to two weeks of unpaid payroll that the employee would not receive until 2010; and the expense of vacation days could be accrued many months before the employee used the benefit. These accrued but

4

unpaid expenses should not have been deducted by the Corporation at the time of accrual if the payment would go to a related employee.

The Internal Revenue Service (IRS) audited Taxpayers and decided that employees of the Corporation who participated in its ESOP were related to the Corporation. It therefore disallowed deductions taken for the 2009 tax year based on expenses accrued in that year but not paid to the related employees until 2010. Taxpayers unsuccessfully contested the alleged deficiencies in the United States Tax Court and now appeal to this court.

## II. DISCUSSION

"We review tax court decisions in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. The Tax Court's legal conclusions are subject to de novo review, and its factual findings can be set aside only if clearly erroneous." *Katz v. C.I.R.*, 335 F.3d 1121, 1125–26 (10th Cir. 2003) (citation and internal quotation marks omitted). We proceed to discuss the applicable statutory provisions and explain why the challenges by Taxpayers are unpersuasive.

### A. IRC § 267

We begin with IRC § 267. Paragraph 267(a)(2) is entitled "Matching of deduction and payee income item in the case of expenses and interest." It provides that if the taxpayer and a person to whom the taxpayer is to make a payment are related—that is, "are *persons specified in any of the paragraphs of subsection (b)* [of § 267]," *id.* § 267(a)(1) (emphasis added)—then the amount of the payment cannot be deducted until

5

it is paid or is includible in the recipient's gross income, *see id.* § 267(a)(2)[2]. This

provision keeps taxpayers from exploiting differences in accounting methods between the

payer (who deducts the payment) and the recipient (who treats the payment as income) to

artificially evade, or at least delay, income taxes. It was enacted "to require related

persons 'to use the same accounting method with respect to transactions between

themselves in order to prevent the allowance of a deduction without the corresponding

inclusion in income.'" *Tate & Lyle, Inc. v. C.I.R.*, 87 F.3d 99, 103 (3d Cir. 1996) (quoting

H.R. Supp. Rep. 998-432, Part 2, at 1578, *reprinted in* 1984 U.S.C.C.A.N. 697, 1205)

(House Report); *see also* House Report at 1578–79 ("The failure to use the same

accounting method with respect to one transaction involves unwarranted tax benefits,

especially where payments are delayed for a long period of time, and in fact may never

---

[2] The pertinent part of § 267(a)(2) states:

If--

(A) by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not (unless paid) includible in the gross income of such person, and

(B) at the close of the taxable year of the taxpayer for which (but for this paragraph) the amount would be deductible under this chapter, both the taxpayer and the person to whom the payment is to be made are persons specified in any of the paragraphs of subsection (b),

then any deduction allowable under this chapter in respect of such amount shall be allowable as of the day as of which such amount is includible in the gross income of the person to whom the payment is made (or, if later, as of the day on which it would be so allowable but for this paragraph). . . .

be paid."); *Metzger Trust v. C.I.R.*, 76 T.C. 42, 75 (1981) (Congress enacted § 267 "to prevent the use of differing methods of reporting income for Federal income tax purposes in order to obtain artificial deductions for interest and business expenses."). For example, absent the limitations of § 267, an accrual-basis taxpayer indebted to a closely related cash-basis taxpayer could, as interest became due on the debt, report the interest as a deduction without making the payment to the cash-basis taxpayer, who would report no income at the time and might never report income if payment was arranged to arrive when the cash-basis taxpayer had offsetting losses. *See Metzger Trust*, 76 T.C. at 75.

Subsection 267(b), entitled "Relationships," lists a number of relationships covered by this provision of the statute, such as "[m]embers of a family" and "[a] grantor and a fiduciary of any trust," 26 U.S.C. § 267(b)(1), (4). Relevant here, however, is subsection (e), which provides "[s]pecial rules for pass-thru entities." It states that "an S corporation [and] any person who owns (directly or indirectly) any of the stock of such corporation" are to be "treated as *persons specified in a paragraph of subsection (b)*." 26 U.S.C. § 267(e)(1) (emphasis added)[3]. In other words, an S corporation and a

---

[3]§ 267(e) states in full:

Special rules for pass-thru entities.--

(1) In general.--*In the case of any amount paid or incurred by, to, or on behalf of, a pass-thru entity, for purposes of applying subsection (a)(2)--*

(A) such entity,

(B) *in the case of--*

7

shareholder of that S corporation are related to one another for purposes of § 267.

Because the Corporation ESOP owned much—later, all—of the shares of the

Corporation, the Corporation and the Corporation ESOP were related.

Also relevant here is § 267(c), entitled "Constructive ownership of stock." It

provides, "For purposes of determining, in applying subsection (b), the ownership of

stock—(1) Stock owned, directly or indirectly, by or for a corporation, partnership, state,

or *trust* shall be considered as being owned proportionately by or for its shareholders,

partners, or *beneficiaries*." 26 U.S.C. § 267(c)(1) (emphasis added). If the stock held by

an ESOP is held in a trust within the meaning of § 267(c)(1), and if the employees

participating in the ESOP are *beneficiaries* of that trust, then the Corporation employees

---

(i) a partnership, any person who owns (directly or indirectly) any capital interest or profits interest of such partnership, or

(ii) *an S corporation, any person who owns (directly or indirectly) any of the stock of such corporation*,

(C) any person who owns (directly or indirectly) any capital interest or profits interest of a partnership in which such entity owns (directly or indirectly) any capital interest or profits interest, and

(D) any person related (within the meaning of subsection (b) of this section or section 707(b)(1)) to a person described in subparagraph (B) or (C),

*shall be treated as persons specified in a paragraph of subsection (b).* Subparagraph (C) shall apply to a transaction only if such transaction is related either to the operations of the partnership described in such subparagraph or to an interest in such partnership.
(2) Pass-thru entity.ab--For purposes of this section, the term "pass-thru entity" means--
(A) a partnership, and

(B) an S corporation.

(Emphasis added.)

participating in the ESOP must be considered owners of stock of the Corporation under § 267(c). In our view, both of those conditions are met. To support that conclusion, we need to examine both trust law and ERISA.

## B. Trust Law and ERISA

The term *trust* is not defined in § 267. The Restatement (Third) of Trusts § 2 (2003) (hereinafter Restatement Third) broadly defines the term as "a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." A trust generally has the following elements: (1) trust property (real or personal, tangible or intangible) which the trustee holds subject to the rights of another, (2) a trustee (an individual or entity charged with holding the trust property for the benefit of another), and (3) a beneficiary (the person for whose benefit the trustee holds the trust property). *See* Amy M. Hess et al., Bogert's Trust and Trustees § 1 (2018) (Bogert). Essentially the same concept is reflected in the IRC regulations: "Generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit." 26 C.F.R. § 301.7701-4(a).

One purpose of ERISA is to protect employees from abuse and mismanagement of funds designated for employee-benefit plans. *See Massachusetts v. Morash*, 490 U.S.

9

107, 112 (1989) ("ERISA was passed . . . to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits."); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989). To this end, ERISA establishes minimum standards for benefit plans by "imposing reporting and disclosure mandates, participation and vesting requirements, funding standards, and fiduciary responsibilities for plan administrators. It envisions administrative oversight, imposes criminal sanctions, and establishes a comprehensive civil enforcement scheme." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 651 (1995) (citations omitted). The safeguard relevant here is that it mandates that assets of employee-benefit plans be held in trust. *See* 29 U.S.C. § 1103(a) (absent exceptions not relevant here, "all assets of an employee benefit plan shall be held in trust by one or more trustees"); Restatement Third § 2 cmt. a ("The term 'trust' . . . includes . . . private pension-fund arrangements in trust form.").

Although ERISA trusts are not governed by the common law of trusts established by state law, *see Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1983) ("Congress applied the principle of pre-emption in its broadest sense to foreclose any non-Federal regulation of employee benefit plans, creating only very limited exceptions . . . ." (internal quotation marks omitted)), the federal statutory requirements mirror the law regarding a common-law trust. The trust property consists of all the assets of the employee-benefit plan. The trust must have trustees. *See* 29 U.S.C. § 1103(a). The trust property must be managed for the exclusive benefit of plan participants and beneficiaries. *See* 29 U.S.C. § 1103(c)(1) (absent exceptions not relevant here, "the assets of a plan

shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.").  Indeed, citing the provision that "assets of an employee benefit plan shall be held in trust," 29 U.S.C. § 1103(a), the Supreme Court observed that "rather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trust to define the general scope of their authority and responsibility." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985); *see also Firestone*, 489 U.S. at 110 ("ERISA abounds with the language and terminology of trust law.").  Also, although a participant or beneficiary of an ERISA plan cannot seek relief under state trust law, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (ERISA's civil enforcement remedies are exclusive; remedies under state law are not available.), ERISA itself provides robust remedies for violations of fiduciary duties, *see Varity Corp. v. Howe*, 516 U.S. 489 (1996) (construing 29 U.S.C. § 1132, entitled "Civil enforcement"); *see also Garratt v. Walker*, 164 F.3d 1249, 1253 (10th Cir. 1998) ("The civil enforcement mechanism . . .  of ERISA, specifically 29 U.S.C. § 1132(a)(1)(B), allows a plan participant to bring a civil action not only for recovery of plan benefits and enforcement of plan rights, but also to clarify his rights to future benefits under the terms of the plan.").

To be sure, although courts in the ERISA context "are to apply common-law trust standards, [they must] bear[] in mind the special nature and purpose of employee benefit plans." *Varity*,  516 U.S. at 506 (internal quotation marks omitted).  But that does not

11

change the essential nature of an ERISA trust as a trust. After all, even common-law trusts regularly contain provisions departing from the default common-law standards. *See* Restatement Third § 4 cmt. a(1) ("[M]ost (but not all) of trust law consists of 'default rules,' as opposed to mandatory or restrictive rules . . . .") Here, Congress authorizes the courts to recognize the need for special standards in this context.

We therefore conclude that the Corporation's ESOP trust is a trust within the meaning of § 267 and that the Commissioner properly applied that section to Taxpayers. Taxpayers' brief has a jumble of arguments that an ESOP trust is not a "trust" within the meaning of the term in IRC § 267. But to the extent that we can understand these arguments, they are unconvincing. We consider them in turn.

Taxpayers argue that an ERISA trust is distinguishable from a common-law trust (and thus is not covered by § 267) because it protects the interests of "participants," who are distinguished from "beneficiaries" in ERISA. But this argument relies on semantics rather than substance. As previously noted, a beneficiary "is the person for whose benefit the trustee holds the trust property." Bogert § 1. The property in an ERISA trust "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Both participants in the plan and their beneficiaries satisfy the definition of *beneficiary* in trust law. All ERISA does is use different terminology to describe two distinct classes of beneficiaries—those employees or former employees who participate in the plan, and the beneficiaries whose interests derive from a participant. *See* 29 U.S.C. § 1002(7) (defining *participant*), (8) (defining *beneficiary* as "a person

12

designated by a participant, or by terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."). The common law of trusts allows for different beneficiaries "whose interests may be enjoyable concurrently or successively." Restatement Third § 44 cmt. a. ERISA's use of the term *participant* to describe certain beneficiaries does not remove ERISA trusts from the IRC definition of trusts. The term *beneficiary* in § 267 has been interpreted quite broadly, *see Wyly v. United States*, 662 F.2d 397, 402 (5th Cir. 1981) (taxpayers were beneficiaries of trust even though they would receive nothing unless their four children died without issue); and in any event, there is no need for such a broad construction here, since every participant easily satisfies the common-law definition of *beneficiary*.

Taxpayers also argue that ERISA trusts are not true trusts because they are called "qualified trusts." They cite various provisions of the Internal Revenue Code that do not treat ESOPs the same way as they treat other trusts. But all that shows is that an ESOP trust is a special type of trust, with special tax consequences for which it "qualifies." For example, such a trust pays no income tax. *See* 26 U.S.C. § 501(a). The very reason why the term *trust* is preceded by the adjective "qualified" is that special conditions must be met for the trust to qualify. That adjective does not signal that the entity is not a true trust; the term is not "*quasi*-trust." To say that calling the entity a "qualified trust" means that it is not a true "trust" would be like saying that an All Star baseball player is not a real baseball player. We reject Taxpayers' suggestion that when the IRC uses the stand-alone term *trust*, it intends to exclude ESOP "qualified trusts."

13

Taxpayers further contend that an ESOP trust does not satisfy the IRS definition of *trust* in 26 C.F.R. § 301.7701–4(a). They point to the following sentence in the regulation:

> In general, the term "trust" as used in the Internal Revenue Code refers to an arrangement created either by a will or by an inter vivos declaration whereby trustees take title to property for the purpose of protecting or conserving it for the beneficiaries under the ordinary rules applied in chancery or probate courts . . . .

26 C.F.R. § 301.7701–4(a). As they see it, an ESOP trust is distinct from the trusts described in that sentence because it is not created by a will or an inter vivos declaration and is not "generally subject to the rules of chancery or probate courts." Aplt. Br. at 20.

But Taxpayers ignore the words "[i]n general" at the beginning of the quoted sentence; the language that follows those words is clearly intended to be illustrative, not exhaustive. And they ignore the language three sentences later in the regulation: "Generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint enterprise for the conduct of business for profit." 26 C.F.R. § 301.7701–4(a). We have already explained how ERISA trusts fulfill those requirements. One should not make too much of the statement that trusts *generally* are created "either by will or by an inter vivos declaration" (which apparently does not include trusts created by corporations). *Id.* Similar language appears in the Restatement Third. Section 3(1) states: "The person who creates a trust is the settlor," and comment a to the section

14

states: "The term 'settlor' includes a person who creates a trust by will as well as a person who creates a trust inter vivos." But that language does not exclude trusts created by others, such as corporations. Comment e to § 3 states, "The term 'person' includes corporations and unincorporated associations." *Cf.* Restatement Third § 10 cmt. b. ("A trust may also be created by statute.").

Nor is it material that the terms of an ERISA trust cannot be enforced in chancery or probate courts. Federal-court remedies provided in ERISA itself reflect the common law of trusts and are an adequate substitute. Besides, the regulation does not say that the rules governing a trust must be *enforced* in chancery or probate courts; it just says that such a trust should be subject to the "ordinary rules applied" in those courts. 26 C.F.R. § 301.7701–4(a). Also, we think it informative that the regulation notes certain entities (but notably not ERISA trusts) that are known as trusts but not treated as trusts for purposes of the IRC because they do not satisfy the requirements of an ordinary trust. *See id.* § 301.7701–4(b) (business trusts), (c) (investment trusts). We are confident that an ERISA trust satisfies the requirements of the regulation.

Taxpayers also claim support in Revenue Ruling 89-52, which includes the statement, "The term 'trust' is not a term of art or of fixed content, and its meaning for the purposes of employee trusts under section 401(a) of the Code [which sets forth the requirements for an employee-benefit trust to qualify for exemption from taxation under 26 U.S.C. § 501(a)] is not necessarily the same as under state law or as under other sections of the Internal Revenue Code." *See* Rev. Rul. 89-52, 1989-1 C.B. 110. But read in the context of the entire ruling, the point of the sentence is that additional requirements

may be imposed on employee trusts that are not imposed on trusts in general. The next paragraph of the Ruling makes this clear:

> Generally, for a trust to be qualified under section 401(a) of the Code, the trust must be a valid trust under the law of the jurisdiction in which the trust is located. However, even if the trust is valid under local law, the arrangement may be required to satisfy certain other requirements in order to be considered a trust for purposes of section 401(a).

Rev. Rul. 89-52, 1989-1 C.B. 110 (citation omitted). In the trust at issue in the Ruling, the trust was not qualified as an employee trust because the elements of a trust relationship were not present. *See id*. ("[P]articipants [in the trust at issue] have the right to acquire, hold and dispose of an amount attributable to their account balances in the plan."). If anything, the Ruling supports the proposition that a "qualified trust" must be a "trust" and also meet certain other requirements.[4]

Taxpayers' final argument against treating the ESOP trust as a "trust" under § 267 is a puzzling one. It relies on 29 U.S.C. § 1132(d), which states that "[a]n employee benefit plan may sue or be sued [under ERISA] as an entity" and that "[a]ny money judgment under [ERISA] against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless

---

[4] The sentence in the Ruling relied on by Taxpayers cites to *Tavannes Watch Co. v. Commissioner*, 176 F.2d 211, 215 (2d Cir. 1949). In that case the court held that an entity was a trust that satisfied the requirements for an employer profit-sharing plan even though it was not formally a trust. We do not think that this opinion helps Taxpayers either. The court was dealing with a transitional provision for employee-benefit plans that predated a new statute and did not comply with the new requirements. The court ruled that the entity should be treated as qualifying during the transition period because its essential nature was that of a trust. *See id.* at 214–16. No such special circumstances are present here.

liability against such person is established in his individual capacity under [ERISA]." They conclude from this language that "it is the plan which is the legal entity, and not the trust which is a part of that plan." Aplt. Br. at 11. Are they suggesting that the ESOP trust is a nonentity? The essential facts for application of § 267 are that the assets of the plan are held in a trust and the participants in the plan are beneficiaries of the trust. Taxpayers do not explain the relevance of statutory provisions concerning who can sue whom. And anyway they admit that trustees of an ESOP trust can be sued, although they assert, without citing authority, that in that event the trustees "are sued as agents of the plan, not of the trust." *Id.*

In addition to arguing that the ESOP trust is not a "trust" within the meaning of § 267, Taxpayers raise several objections to applying that section to an ESOP trust on the ground that this would conflict with other provisions of the IRC. First they claim that § 267 cannot apply because it is within Subchapter B (of chapter 1 of subtitle A of the IRC), which covers "Computation of Taxable Income," whereas ESOPs are formed and governed by the provisions in Subchapter D, which addresses "Deferred Compensation." But they do not point to any requirement in Subchapter D that conflicts with § 267, and we perceive no conflict. What is before us to resolve is the taxation of the shareholders of a Subchapter S corporation, who *are* subject to Subchapter B. The constructive ownership rules of § 267(c) explicitly apply to transactions with corporations, partnerships, estates, and trusts, *see* 26 U.S.C. § 267(c), all of which are also subject to provisions in other subchapters of the IRC. *See* 26 U.S.C. §§ 301 et seq. (Subchapter C-Corporate Distributions and Adjustments); §§ 641 et seq. (Subchapter J-Estates, Trusts,

Beneficiaries, and Decedents); §§ 701 et seq. (Subchapter K-Partners and Partnerships). There is no reason to treat a Subchapter D trust differently.

Taxpayers similarly argue that applying the attribution rules in § 267 to trusts like an ESOP trust would be absurd because ESOP participants would be taxed on their share of ESOP income, as would beneficiaries of charitable trusts and the like. But § 267 does not impose taxes on any person or entity that would not otherwise be taxed. It simply says, roughly speaking, that deductions taken by those who are taxed may have to be delayed—in particular, an accrual-basis taxpayer cannot deduct an accrued expense payable to a related person (not necessarily a taxpayer) in a tax year before the tax year in which the related person receives the payment. The tax liability of the related person is not affected. Taxpayers' various references to the nontaxation of ESOPs are therefore beside the point. Of course, if a particular provision of Subchapter D explicitly overrides § 267 (as Taxpayers contend is true of 26 U.S.C. § 404(a), although we note that the Commissioner disputes the contention), then the Subchapter D provision may well prevail. But Taxpayers do not suggest that any provision of Subchapter D addresses their situation.

Another of Taxpayers' statutory arguments relies on 26 U.S.C. § 318, which, in our view, actually supports the Commissioner. Titled "Constructive ownership of stock," § 318 sets forth attribution rules for transactions by Subchapter C Corporations for such purposes as determining whether a transaction is treated as a dividend or a sale of stock. *See* Bittker & Eustice, Fed. Income Taxation of Corp. and S'holders, ¶¶ 9.02–9.05, Mar. 2019; S. Rep. 83-1622, at 45, 252-53 (1954) *reprinted in 1954*; U.S.C.C.A.N 4621, 4676,

18

4890–92. Taxpayers point to § 318(a)(2)(B)(i), which excludes employee-benefit trusts from the § 318 constructive-ownership rules. It states: "Stock owned, directly or indirectly, by or for a trust (*other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a)*) shall be considered as owned by its beneficiaries in proportion to the actuarial interest of such beneficiaries in such trust." (Emphasis added.) In particular, stock owned by an ESOP trust would not be considered as owned by its "beneficiaries" (presumably including the participants). Applying that exception to the present case, Taxpayers contend that the Corporation stock owned by its ESOP should not be considered to be owned by the Corporation employees who participate in the plan.

The argument may look persuasive, but there is a fatal flaw. The language introducing this provision is crucial. The relevant language of § 318 is:

> (a) General rule. – *For purposes of those provisions of this subchapter to which the rules contained in this subsection are expressly made applicable*
> . . .
> (2) Attribution from partnerships, estates, trusts, and corporations. –
> . . .
> > (B) From trusts. –
> > > (i) Stock owned, directly or indirectly by or for a trust (*other than an employees' trust described in section 401(a) which is exempt from tax under section 501(a)*) shall be considered as owned by its beneficiaries in proportion to the actuarial interest of such beneficiaries in such trust.

26 U.S.C. § 318(a)(2)(B)(i) (emphasis added). Consequently, this provision cannot exclude ESOP trusts from the meaning of *trust* in § 267 for two independently sufficient reasons: (1) § 267 is not in the same subchapter as § 318 (which is in Subchapter C), and (2) § 267 does not even mention § 318, much less make it "expressly . . . applicable."

19

Indeed, rather than supporting Taxpayers' argument, § 318 undermines it because the section implicitly assumes that an "employees' trust described in section 401(a)" would be considered a "trust" governed by that section if it were not expressly excluded. Thus, the failure to explicitly exclude employee trusts in § 267 strongly indicates that such trusts are included.

Taxpayers cite to *Boise Cascade Corp. v. United States*, 329 F.3d 751, 755 (9th Cir. 2003), where § 318 was applied. But their reliance on that decision is misplaced. The court applied § 318 to 26 U.S.C. § 302, entitled "Distributions in redemption of stock." Section 302, however, satisfies the conditions for application of § 318. It appears in Subchapter C and it explicitly states that "section 318(a) shall apply in determining the ownership of stock for purposes of this section." 26 U.S.C. § 302(c)(1); *see also* 26 U.S.C. 318(b) (cross referencing § 302 as a provision to which § 318(a) applies).

Finally, Taxpayers, rather than analyzing the language of § 267, simply argue that it is inconsistent with some other provisions of the IRC and that if it were intended to apply to Subchapter S corporation ESOPs, it would have said so explicitly. We are not persuaded. Applying § 267 to the circumstances here does not contradict any other provision of the IRC, and the language of § 267 quite clearly applies in this context.

### III.   CONCLUSION

We **AFFIRM** the decision of the Tax Court except that we **REMAND** for recalculation of the correct amounts of the deficiencies.