T.C. Summary Opinion 2021-6

UNITED STATES TAX COURT

ALAN DEXTER WENK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3154-19S.                          Filed February 10, 2021.

Alan Dexter Wenk, pro se.

Robert C. Teutsch II and Douglas S. Polsky, for respondent.

SUMMARY OPINION

VASQUEZ, Judge:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

For taxable year 2016 respondent determined a deficiency in Federal income tax of $39,649, a section 6662(a) accuracy-related penalty of $3,551, and a section 6651(a)(1) addition to tax of $2,772. After concessions,[2] the issues for decision are: (1) whether a distribution of $109,471 from petitioner's retirement account is includable in his gross income; if so, (2) whether petitioner is liable for the 10% additional tax on that distribution under section 72(t), and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Kansas at the time he filed the petition.

Petitioner is a former certified public accountant (C.P.A.). From 2008 to March 2014 he worked for Performance Contracting Group, Inc. (PCG), as the company's corporate accounts payable manager. During his employment

---

[1](...continued)
Court Rules of Practice and Procedure.

[2] Respondent concedes that petitioner is not liable for the sec. 6662(a) accuracy-related penalty.

petitioner caused PCG to issue fraudulent checks to himself or business entities he controlled. The U.S. Attorney for the District of Kansas charged petitioner with 20 counts of bank fraud under 18 U.S.C. sec. 1344(1). Petitioner pleaded guilty to two of those counts pursuant to a plea agreement he signed on February 8, 2016. The U.S. District Court for the District of Kansas sentenced petitioner to a prison term of 15 months followed by two years of supervised release.

Petitioner's plea agreement required him to pay restitution of $135,560.12 to PCG. In February 2016 petitioner elected to take a full distribution from his retirement account held at Principal Life Insurance (Principal).[3] He simultaneously granted a limited power of attorney to Rod Eisenhauer for the sole purpose of endorsing the distribution check to PCG. The estimated value of the account at the time of the election was $108,802.88.

Principal issued petitioner a check for $82,924.72 after withholding Federal income tax of $21,894 and State income tax of approximately $4,652. Upon Mr. Eisenhauer's endorsement of the check to PCG, the District Court credited petitioner's restitution obligation by $82,924.72. Petitioner was 43 years old at the time of the distribution.

---

[3] The distribution election form describes the retirement account as an "ESOP/401(K) PLAN". We infer that petitioner's retirement account was under either an employee stock ownership plan (ESOP) or a sec. 401(k) plan.

On July 11, 2016, the District Court directed Comerica Bank to transfer $135,560.12 from petitioner and his ex-wife's joint account to its Clerk. The District Court Clerk subsequently applied $52,679.61 of those funds to petitioner's outstanding restitution balance. The remaining $82,880.51 was returned to petitioner's ex-wife.

Petitioner reported to Federal prison in or around July 2016. While incarcerated, petitioner tried to file his 2016 Federal income tax return. However, he did not have access to any of his financial records; and despite his diligent efforts, he was unable to access the resources he needed to file his return or a request for extension by the due date.

Petitioner was released from prison in July 2017. That month he requested and received from respondent a wage and income transcript for 2016. The transcript, which was issued on July 13, 2017, did not contain information about the retirement distribution that petitioner had elected in February 2016. Petitioner used the wage and income transcript to prepare his return but did not include the distribution as income on the return. He filed the return on September 4, 2017.

On a date not established by the record, Principal reported that it had paid petitioner taxable retirement income of $109,471 during the year at issue. On November 19, 2018, respondent issued petitioner a notice of deficiency. Therein

respondent determined, on the basis of Principal's information reporting, that petitioner had unreported income of $109,471. Respondent also determined an additional tax of $10,947 under section 72(t) because petitioner took an early distribution from a qualified retirement plan. Finally, respondent determined a $2,772 addition to tax under section 6651(a)(1) for failure to timely file the return.[4]

Petitioner timely petitioned this Court, and a trial was held in Wichita, Kansas.

## Discussion

### I.    Retirement Plan Distribution

We first address whether the distribution is includable in petitioner's income for 2016.

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it wrong.[5]  See Rule 142(a);

---

[4] Respondent also allowed petitioner an additional withholding credit of $21,894.  Other adjustments in the notice of deficiency are computational and need not be addressed in this opinion.

[5] Under sec. 7491(a), the burden of proof may shift to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if the taxpayer meets certain preliminary conditions.  See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).  Petitioner has not claimed or shown that he meets the

(continued...)

Welch v. Helvering, 290 U.S. 111, 115 (1933). In unreported income cases, however, the Court of Appeals for the Tenth Circuit[6] requires the Commissioner to establish "[s]ome reasonable foundation for the assessment" in order to preserve the presumption of correctness. See Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991), aff'g T.C. Memo. 1989-552. Once the Commissioner introduces some substantive evidence linking the taxpayer to the income, the presumption of correctness applies and the burden shifts to the taxpayer to produce substantial evidence overcoming it. United States v. McMullin, 948 F.2d 1188, 1192 (10th Cir. 1991); Bolles v. Commissioner, T.C. Memo. 2019-42, at *13.

The parties stipulated that petitioner elected to take a full distribution from his retirement account in 2016. The distribution election form in the record reflects that the account had an estimated balance of $108,802.88, which is close in value to the $109,471 of retirement income reported by Principal and the

___

[5](...continued)
requirements of sec. 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

[6] We apply the precedent of the Court of Appeals for the Tenth Circuit to which an appeal in this case, if one could be taken, would lie absent a stipulation to the contrary. See sec. 7482(b)(1); Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971); see also sec. 7463(b).

unreported income determined by respondent. The record also includes several District Court orders and other documents establishing that the distribution, after Federal and State income tax withholding, was credited to petitioner's restitution obligation. Consequently, the presumption of correctness attaches to respondent's notice of deficiency, and petitioner bears the burden of proving that the determination is incorrect.[7]

Section 61(a) provides that "gross income means all income from whatever source derived". Gross income includes, but is not limited to, items such as compensation, annuities, income from life insurance and endowment contracts, and pensions. Sec. 61(a)(1), (9), (10), (11).

Section 402(a) provides the general rule that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under section 72

_____

[7] The parties did not address whether sec. 6201(d) applies to this case. Under sec. 6201(d), if a taxpayer asserts a reasonable dispute with respect to an item of income reported on an information return filed by a third party and the taxpayer meets certain other requirements, the Commissioner bears the burden of producing reasonable and probative evidence, in addition to the information return, concerning the deficiency attributable to the income item. Assuming arguendo that respondent bears the burden of production under sec. 6201(d), we find that respondent has satisfied it.

(relating to annuities)." Petitioner does not dispute that his retirement plan trust was a qualified trust under section 401(a).[8] Thus, subject to certain exceptions, see, e.g., sec. 402(c)(1) (excluding certain "rollover" distributions from income), any amount actually distributed to petitioner normally would be subject to Federal income tax pursuant to section 72, see sec. 402(a).

Petitioner elected to take a full distribution from his retirement account in 2016. He has neither argued nor established that an exception applies. Instead he contends that he never received or benefited from the retirement distribution. However, the record establishes that the proceeds from the distribution were paid to him and then, through Mr. Eisenhauer, transferred to his former employer in partial satisfaction of his restitution obligation. Respondent properly included the distribution in petitioner's gross income.

## II. Additional Tax Under Section 72(t)

We next address whether petitioner is liable for the additional tax under section 72(t).

---

[8] As stated supra note 3, the distribution election form describes petitioner's retirement plan as an "ESOP/401(K) PLAN". Qualified trusts under sec. 401(a) generally include ESOP and sec. 401(k) plan trusts. See secs. 401(k), 4975(e)(7); see, e.g., Petersen v. Commissioner, 148 T.C. 463, 476 (2017) (identifying ESOP as qualified trust), aff'd in part, remanded on another issue, 924 F.3d 1111 (10th Cir. 2019); Robertson v. Commissioner, T.C. Memo. 2014-143, at *5 (identifying sec. 401(k) plan as same).

Section 72(t)(1) imposes a 10% additional tax on the taxable amount of an early distribution from a qualified retirement plan (as defined in section 4974(c)). The term "qualified retirement plan" includes a section 401(k) plan and an ESOP. Uscinski v. Commissioner, T.C. Memo. 2005-124, 2005 Tax Ct. Memo LEXIS 123, at *6; see also secs. 72(t)(1), 401(a), (k)(1), 4974(c)(1), 4975(e)(7).  A distribution is early if it is made before the recipient attains the age of 59-1/2.  Sec. 72(t)(2)(A)(i).  However, the 10% additional tax does not apply to certain distributions, such as those attributable to the taxpayer's disability or made for the payment of certain medical expenses.  See sec. 72(t)(2)(A) and (B).

Generally, the taxpayer has the burden of proving his or her entitlement to any of these exceptions.  See Rule 142(a); El v. Commissioner, 144 T.C. 140, 148-149 (2015).  Because petitioner was not 59-1/2 years old at any time during 2016, the distribution from his retirement plan is considered an early distribution for purposes of section 72(t).  Petitioner did not use the distribution for the payment of any expense that would allow him to avoid the 10% additional tax.  Thus, the withdrawal does not fit within any of the statutory exceptions, and the entire distribution is subject to the 10% additional tax.[9]

---

[9] Petitioner argues that he should not be liable for the additional tax because he relied on Principal to withhold the correct amount of tax.  While we are

(continued...)

III.    Addition to Tax Under Section 6651(a)(1)

Finally we address whether petitioner is liable for the section 6651(a)(1) addition to tax. Because we find that petitioner had reasonable cause for failing to timely file his return, we conclude that he is not.

Section 6651(a)(1) imposes an addition to tax for the failure to timely file a required return unless the taxpayer can establish that such failure was due to "reasonable cause and not due to willful neglect". United States v. Boyle, 469 U.S. 241, 245 (1985). The Commissioner bears the initial burden of production to introduce evidence that the return was filed late. See sec. 7491(c). The taxpayer then bears the burden of proving that the late filing was due to reasonable cause and not willful neglect. Boyle, 469 U.S. at 245; see Higbee v. Commissioner, 116 T.C. at 447. Because the parties agree that petitioner's return was not timely filed, respondent has satisfied his burden of production. Accordingly, petitioner must prove that the untimely filing was due to reasonable cause and not willful neglect. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Reasonable cause requires the taxpayer to demonstrate that he exercised ordinary business care and prudence but nevertheless was unable to file the return

---

[9](...continued)
sympathetic to petitioner's situation, any such reliance does not overcome the imposition of the additional tax.

within the prescribed time. <u>Boyle</u>, 469 U.S. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect is defined as a "conscious, intentional failure or reckless indifference." <u>Boyle</u>, 469 U.S. at 245. Whether the elements that constitute "reasonable cause" are present in a given situation is a question of fact. <u>Id.</u> at 249 n.8.

Petitioner had reasonable cause for failing to timely file his 2016 return. Petitioner was incarcerated from July 2016 until July 2017. Moreover, at trial he testified that while incarcerated he had attempted to comply with his filing obligation but was prevented from doing so. We found his testimony credible, especially in the light of his postrelease conduct. <u>See</u> <u>Diaz v. Commissioner</u>, 58 T.C. 560, 564 (1972) (observing that the process of distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is the "daily grist of judicial life"). Within days of his release in July 2017, petitioner sought the records he needed to prepare his return, which he filed in early September 2017. Given these facts, we find it more likely than not that petitioner would have filed a timely return or request for extension had he been able to do so.

Respondent argues that petitioner as a former C.P.A. knew the due date for his return but failed to file a timely return or request for extension. Citing <u>Mendes</u>

v. Commissioner, 121 T.C. 308, 321 (2003), he contends that "[t]he mere fact of a taxpayer's incarceration at the time a tax return is due does not constitute reasonable cause for the taxpayer's failure to file the return."

The facts of this case are distinguishable from those in Mendes. In that case we held that the taxpayer's incarceration did not excuse him from his obligation to timely file a return.[10] Mendes v. Commissioner, 121 T.C. at 321; see also Llorente v. Commissioner, 74 T.C. 260, 268-269 (1980) (holding that the fact of incarceration does not alone supply reasonable cause for failure to file timely), aff'd in part, rev'd in part on other grounds and remanded, 649 F.2d 152 (2d Cir. 1981). In this case, however, petitioner does not argue that the mere fact of his incarceration supplies reasonable cause. Rather, he argues that his efforts to timely file were thwarted despite his knowledge of the due date and his diligence in trying to comply with that deadline. As explained above, we found petitioner's testimony credible in the light of his postrelease conduct. Respondent has offered no evidence to rebut petitioner's credible testimony. We conclude that petitioner was unable to file a return or a request for extension within the prescribed time

---

[10] The Mendes taxpayer unsuccessfully argued that he had reasonable cause for failing to file because he believed his attorney had timely filed a return for him. See Mendes v. Commissioner, 121 T.C. 308, 320-321 (2003). Petitioner makes no such argument.

despite exercising ordinary business care and prudence.  See Boyle, 469 U.S. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Thus, petitioner has shown he had reasonable cause for failing to timely file his 2016 return and that his failure was not due to willful neglect.  Consequently, he is not liable for the addition to tax under section 6651(a)(1).

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioner as to the accuracy-related penalty under section 6662(a) and the addition to tax under section 6651(a)(1).