OSCN Found Document:Question Submitted by: Ashley Plyushko, Executive Director, Oklahoma Accountancy Board

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Question Submitted by: Ashley Plyushko, Executive Director, Oklahoma Accountancy Board
2025 OK AG 16
Decided: 12/04/2025
OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2025 OK AG 16, __ P.3d __

 

ATTORNEY GENERAL OPINION

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:

Is an out-of-state accounting firm formed as a professional corporation that is owned by an Employee Stock Ownership Plan eligible to:

(1) qualify to do business in Oklahoma pursuant to the Oklahoma Professional Entity Act, 18 O.S.2021 & Supp.2024, §§ 801 -- 819, and 

(2) register and receive a permit to practice public accounting from the Oklahoma Accountancy Board pursuant to the Oklahoma Accountancy Act, 59 O.S.2021 & Supp.2024, §§ 15.1 -- 15.38?

I. 

SUMMARY

¶1 Generally speaking, the Professional Entity Act requires that all shareholders of a professional corporation doing business in Oklahoma be licensed in the profession for which the corporation was formed. 18 O.S.Supp.2024, § 80959 O.S.Supp.2023, § 15

 

II.

BACKGROUND

¶2 Your request involves the following scenario: an out-of-state accounting firm that holds a permit to provide services in Oklahoma issued by the Oklahoma Accountancy Board ("Board") converted from a limited liability partnership to a professional corporation organized under the laws of its home state. Forty-two percent (42%) of the shares in the new entity are held by its ESOP.

¶3 An ESOP is an employee benefit plan that gives employees an ownership stake in their employer. The mechanics of forming an ESOP can be complex, but at its most basic, a company forms an ESOP through the creation of a trust, which holds company stock that is either contributed directly by the company or purchased with funds contributed by the company. The value of stock is apportioned among dedicated employee accounts, typically in proportion to an employee's pay and longevity at the company. When the employee leaves the company, the company stock that corresponds to that employee's account is re-purchased by the company and the employee receives the equivalent cash payout. See generally ELIZABETH A. MYERS & JOHN J. TOPOLESKI, CONG. RSCH. SERV., IF13104, EMPLOYEE STOCK OWNERSHIP PLANS (ESOPS): AN OVERVIEW (2025). As with any other trust, an ESOP trust is overseen by trustees--the legal owners of the trust assets--who have a fiduciary duty to manage its assets in the best interest of the participating employees. See, e.g., Brundle v. Wilmington Tr., N.A., 241 F.Supp.3d 610, 614 (E.D. Va. 2017) (describing creation of a sample ESOP); see also Petersen v. Comm'r of Internal Revenue, 148 T.C. 463, 473-75 (U.S. Tax Ct. 2017), aff'd, 924 F.3d 1111 (10th Cir. 2019) (describing the formation and characteristics of an ESOP trust).

¶4 You have advised that the ESOP relevant to your question is overseen by five trustees, each of whom is a certified public accountant ("CPA"). The firm now seeks to renew its permit to provide professional accounting services in Oklahoma. You have asked whether the firm's change of entity type and new ownership structure affect the firm's eligibility to (1) do business in Oklahoma under the Oklahoma Professional Entity Act, 18 O.S.2021 & Supp.2024, §§ 801 -- 819, and (2) register and receive a renewal permit to provide accounting services in Oklahoma under the Oklahoma Accountancy Act, 59 O.S.2021 & Supp.2024, §§ 15.1 -- 15.38.

III. 

DISCUSSION

¶5 This Opinion proceeds in two parts. First, it concludes that an out-of-state professional corporation structured as described above may qualify to do business in Oklahoma under the Professional Entity Act, assuming it complies with the statutory requirements. Next, the Opinion concludes that this duly-qualified professional corporation, operating as an accounting firm, may also register and receive a permit to practice accounting services in Oklahoma, again assuming it satisfies the statutory requirements.

A. The Professional Entity Act.

¶6 Enacted in 1961 as the Professional Corporation Act, the Professional Entity Act ("PEA") enables licensed professionals--for example, physicians, attorneys, or accountants--to engage in their practice through a limited liability business entity. See 18 O.S.2021, § 802See Sanders v. Turn Key Health Clinics, 2025 OK 19566 P.3d 591 This historical limitation was rooted in the view that "human personal qualifications for such professions cannot be possessed by a corporation." 1A William M. Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, § 97 (Sept. 2024 Update). Over time, however, states including Oklahoma began to adopt professional entity statutes to allow practitioners to take advantage of the benefits of the corporate form, while maintaining guardrails to safeguard the personal--and often confidential--relationship between professional and client. See 19 C.J.S. Corporations § 653 (Dec. 2024 update); see also Christian v. Shideler, 1963 OK 129382 P.2d 129

¶7 The process of forming an Oklahoma professional entity, or qualifying an out-of-state professional entity, 18 O.S.2021, § 80218 O.S.Supp.2024, § 804see also Sanders, 2025 OK 19see 18 O.S.Supp.2024, § 804 the corporation may provide services in Oklahoma only through licensed practitioners, id. § 811; and the corporation's stated business purpose must be limited to providing one type of professional service or related service, id. §§ 804, 806.

¶8 Finally, the PEA, like equivalent statutes in other states, places limitations on who may hold ownership interests in a professional entity. See Model Bus. Corp. Act, Prof. Corp. Supp. § 22, Official Comment (1984). These ownership restrictions are set forth in title 18, section 809, another provision that was amended in 2024. See supra footnote 2. Before the 2024 amendment, the PEA prohibited unlicensed individuals from holding any ownership interest in a professional entity. 18 O.S.2021, § 809domestic professional entities, but not for foreign professional entities: "An owner of a qualified foreign professional entity need not be duly licensed if he or she is not rendering professional services in this state." 18 O.S.Supp.2024, § 809 (emphasis added). Id.

¶9 Distilled to its simplest terms, this leaves us with three separate rules for ownership of professional entities in Oklahoma:

(1) For domestic professional entities, only individuals who are licensed or otherwise permitted to practice the relevant profession in Oklahoma may hold an ownership interest;

(2) For qualified foreign professional entities, unlicensed individuals may hold ownership interests only if such persons are not rendering professional services in Oklahoma; and

(3) For any professional corporation--domestic or qualified foreign--only individuals who are licensed or otherwise permitted to practice the relevant profession may hold an ownership interest.

¶10 Candidly, it is unclear why the PEA should impose different ownership requirements for professional corporations than for any other professional entity. Nevertheless, the language of section 809 is clear and, as such, it must be interpreted according to its plain meaning. See, e.g., Rickard v. Coulimore, 2022 OK 9505 P.3d 920

¶11 With these provisions in mind, the question is whether the PEA permits shares in a professional corporation to be held by an ESOP, and specifically an ESOP that is managed by licensed professionals as trustees. As described above, when company stock is contributed to an ESOP, it is held in trust with legal title vested in the ESOP trustee and participating employees retaining an equitable interest. See, e.g., Petersen v. Comm'r of Internal Revenue, 924 F.3d 1111, 1116 (10th Cir. 2019) (quoting RESTATEMENT (THIRD) OF TRUSTS § 2 (2003)). In this case, you have advised that the ESOP is overseen by five trustees, each of whom is a CPA. Assuming at least some of the firm's ESOP participants are non-licensed employees, it raises the question of whether this splitting of ownership interests brings the firm out of compliance with PEA's ownership requirement for professional corporations.

¶12 While this question has not been addressed by this office or answered by courts in Oklahoma, it is not novel. Since at least the 1980s, Attorneys General in other states have been asked whether comparable ownership restrictions prohibit stock ownership by ESOPs (or similar employee benefit plans) for the benefit of non-licensed employees. Unfortunately, their answers have not been uniform, and the following are illustrative of the arguments on each side.

¶13 Two Attorneys General concluded that shares in a professional corporation cannot be held by an ESOP whose participants include non-licensed employees, even if the ESOP trustee is a licensed professional. See Ark. A.G. Opinion No. 2000-275, 2000 WL 1848553, at *3-4 (Nov. 6, 2000) ("Ark. Op."), 1995 Ga. Op. Atty. Gen. 138, 1995 WL 124584 (Feb. 10, 1995). In reaching this conclusion, the opinions focused on the trustee's potential conflict of interest. Specifically, the opinions pointed to the policies underlying ownership restrictions in professional entity statutes: "protecting the ethical standards of the profession, and avoiding interference in management decisions by nonprofessionals interested in maximizing the return on their investments." Ga. Op., at *1; see also Ark. Op., at *2. If the trustee were to act in accordance with the ethical standards of the profession, but in a manner that failed to maximize the value of ownership interests, such actions could violate the trustee's duty of undivided loyalty to the trust beneficiaries: the ESOP participants. This potential for a trustee being caught between the ethical standards of the profession and the fiduciary duty to the ESOP participants was enough for the Attorneys General to conclude that the ownership restrictions in their states' professional entity statutes prohibited ESOPs--even those managed by a licensed trustee--from holding stock in the entity for the benefit of non-licensed employees.

¶14 On the other hand, Attorneys General in Iowa and Ohio reached the opposite conclusion. See 1989 Iowa Op. Atty. Gen. 42, 1989 WL 408428 (Sept. 1, 1989) ("Iowa Op."); 1985 Ohio Op. Atty. Gen. 2-241, 1985 WL 204528 (Oct. 29, 1985) ("Ohio Op."). They reasoned that a statutory requirement that ownership interests be held only by licensed professionals is satisfied if the trustee holding legal title to the stock is a licensed professional, even if beneficiaries holding an equitable interest in the stock were non-licensed employees. As the Ohio Attorney General remarked, "regardless of the precise nature of the interest of a trust beneficiary, that interest is not sufficient to negate the conclusion that the holder of the legal title to shares of stock in a professional association is the shareholder for the purposes of [Ohio's professional entity law]." Ohio Op., at *2; see also Iowa Op., at *2. The Attorneys General dismissed concerns of a fiduciary tug-of-war between the profit-maximizing interest of non-licensed employees and the professional obligations of a licensed trustee. By the very nature of the entity they invest in, unlicensed employees' equitable interests "remain subject to the limitation that [the] trustee may not be required to act in a manner that conflicts with public policy or exceeds the authority permitted under applicable laws." Iowa Op., at *3; Ohio Op., at *4. Accord 1997 OK AG 82

¶15 Turning back to your question, the reasoning in these latter two opinions is persuasive. The PEA prohibits individuals from owning stock in a professional corporation if they are not licensed or otherwise permitted to render the professional services for which the corporation is organized. 18 O.S.Supp.2024, § 809See, e.g., U.S. Dept. of Labor v. Koresko, 646 Fed. Appx. 230, 237 (3rd Cir. 2016) (finding that "ordinary notions of property and trust law" applied to an ERISA employee benefit plan, such that "trustees have legal title and a non-beneficial interest in trust assets, [while] beneficiaries...have an equitable or beneficial interest"). While unlicensed employees will benefit from the accrued value of the stock held by the ESOP, they own no more than an equitable interest. And while ESOP trustees have a fiduciary duty to those employees, that duty is limited by the fact that the ESOP owns stock in an accounting firm that, by law, must be managed according to the professional obligations and ethical standards inherent in that occupation. Concerns about a hypothetical conflict of interest on the part of the ESOP trustees is not enough to overcome this reality. Accordingly, the accounting firm described in your question may qualify to do business in Oklahoma as a professional corporation.

B. The Oklahoma Accountancy Act. 

¶16 The next question is whether the foreign professional corporation described in your request, having qualified to do business under the PEA, is eligible to register and obtain a permit to provide accounting services in Oklahoma. The Oklahoma Accountancy Act ("OAA") governs the regulation of accountants and accounting firms that provide services in Oklahoma. The OAA defines an accounting "firm" to include, among others, a "professional corporation, or any other professional form of organization organized under the laws of this state or the laws of another jurisdiction," that is "engaged in accountancy[.]" 59 O.S.Supp.2024, § 15Id. 

¶17 As with the PEA, the OAA also includes restrictions on who may hold ownership interests in an accounting firm. Specifically, a firm applying for a permit to practice in Oklahoma must document, subject to exceptions not relevant here, that "a simple majority of the ownership of the firm, in terms of financial interests and voting rights, belongs to partners or shareholders" engaged in accounting work and certified or licensed in one or more jurisdictions. 59 O.S.Supp.2023, § 15Id.

¶18 For the same reasons set forth in section III.A supra, the firm described in your request satisfies this requirement. The shares of the firm held by the ESOP are legally owned by the ESOP trustees, each of whom is a licensed CPA. Thus, the ownership interest held by the ESOP "belongs to...shareholders engaged in" the practice of accounting, as does the non-ESOP ownership interest held by the firm's licensed employees. 

¶19 It is, therefore, the official Opinion of the Attorney General that:

An out-of-state accounting firm formed as a professional corporation that is owned by an Employee Stock Ownership Plan ("ESOP") is eligible to (1) qualify to do business in Oklahoma pursuant to the Oklahoma Professional Entity Act, 18 O.S.2021 & Supp.2024, §§ 801 - 819, and (2) register and receive a permit to practice public accounting from the Oklahoma Accountancy Board pursuant to the Oklahoma Accountancy Act, 59 O.S.2021 & Supp.2024, §§ 15.1 -- 15.38, so long as the ESOP's trustees are licensed accountants.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA

ETHAN SHANER
DEPUTY GENERAL COUNSEL

FOOTNOTES

[1] For instance, the PEA explicitly "[d]oes not alter any law applicable to the relationship between a person rendering professional services and a person receiving such services, including liability arising out of such professional services." 18 O.S.2021, § 812

See Senate Bill 620, 2024 Okla. Sess. Laws ch. 120. The steps for a foreign professional corporation to qualify to do business in Oklahoma are now set forth in title 18, sections 804 (requirements under the PEA) and 1130 (requirements under the Oklahoma General Corporation Act applicable to all corporations).

18 O.S.Supp.2024, § 803

and owners of the entity are licensed or otherwise permitted to practice in Oklahoma. By contrast, a foreign professional entity must provide such certification as to its managers, but not its owners. 18 O.S.Supp.2024, § 804

See, e.g., 59 O.S.Supp.2023, §§ 15

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105